## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Jessie Gillians,

Debtor(s).

C/A No. 10-06461-JW

Chapter 13

**ORDER**

**ENTERED NOV 17 2010 K.E.P.**

**FILED** ___ O'clock & ___ min ___ M NOV 17 2010 United States Bankruptcy Court Columbia, South Carolina (33)

This matter comes before the Court on the Chapter 13 Trustee's Motion to Dismiss the above-captioned case filed by Jessie Gillians ("Debtor") for lack of regular income ("Motion"). At the time of the filing of the petition, Debtor was incarcerated and merely anticipated unemployment compensation upon his release. The Trustee questioned Debtor's ability to fund his proposed plan since he had no source of regular income and asserts that the mere anticipation of income is insufficient to justify the delay to creditors. A hearing was held on the Motion on October 21, 2010.

### FINDINGS OF FACT

1. Debtor filed for bankruptcy on September 6, 2010.

2. At the time of filing, Debtor was incarcerated for civil contempt of an order of the Berkeley County Family Court ("Family Court") for failure to pay child support.

3. Before his incarceration, Debtor was employed at JW Aluminum and earned approximately $60,000.00 per year.

4. On or about the time of his incarceration, Debtor lost his job. At the time of the hearing, he expected to receive unemployment benefits in the amount of $326.00 per week but had only recently applied.

5. Debtor testified at the hearing that he owes approximately $47,000.00 in back

child support. His original schedules indicated a domestic support obligation in the amount of $59,816.00, $16,379.00 in unsecured debt, and $5,595.00 in secured debt.

6. Debtor acknowledged at the hearing that he filed bankruptcy in order to obtain release from incarceration as a result of the Family Court contempt order.

7. Debtor filed a plan on September 16, 2010 which requires payments to the Trustee of $1206.00 per month for 57 months. The originally filed Schedule I – Current Income of Individual Debtor(s) indicated no current income, but projected unemployment compensation of $1400.00 per month. Schedule J – Current Expenditures of Individual Debtor(s) indicated expenses of $900.00 per month.

8. Debtor made the October plan payment with the assistance of family members.

9. After the Debtor's testimony at the hearing on the Motion, the Trustee offered to withdraw his Motion to give the Debtor a chance to receive unemployment compensation and continue making plan payments. Nevertheless, the Court took the matter under advisement.

10. The initial confirmation hearing was held in this case on November 4, 2010. The Trustee objected to confirmation due to a lack of feasibility of the plan due to Debtor's insufficient income.

11. At the confirmation hearing, Debtor testified that he had recently started a full-time job and was earning $10.50 per hour. The Trustee agreed to give Debtor until November 15, 2010 to remit his November plan payment, become current with the post-petition domestic support obligation paid in care of the Family Court, and file an amended Schedule I and J. The confirmation hearing was continued until December 2,

2010. The present record of the case does not indicate the filing of an amended Schedule I and J to indicate the new employment.

12. The facts of this case are similar to several other cases filed in this District, many by Debtor's counsel, in which a debtor is incarcerated for failure to pay child support before filing bankruptcy and released upon the filing of a bankruptcy petition upon the argument of debtor's counsel to the state family court that continued incarceration would violate the automatic stay of 11 U.S.C. § 362.[1]

## CONCLUSIONS OF LAW

In a typical chapter 13 case in which a debtor has past and current child support obligations,[2] upon confirmation of the plan, the arrearage on the domestic support obligation at the time of the petition is paid through the plan payments to the Chapter 13 trustee and the debtor is responsible for making current and future payments as they become due. The debtor is required to be current in post-petition payments before the plan can be confirmed. 11 U.S.C. § 1325(a)(8); SC LBR 3015-3. In that way, a confirmed plan provides a means for a debtor to catch-up or cure prepetition defaults of payments, while pledging to remain current in the future. However, pursuant to 11 U.S.C. § 109(e) of the Bankruptcy Code, "only an individual with regular income ... may be a debtor under Chapter 13 of this title." In the instance of incarcerated individuals, often without employment or other source of income at the time of the petition, a question of feasibility and the reasonable likelihood of a successful reorganization arises. In addition, if the aim of such filing is primarily to trigger the automatic stay for the

---

[1] Further references to the Bankruptcy Code shall be by section number only.
[2] Pre-petition court orders requiring the payment of child support are considered a "domestic support obligation," a defined term pursuant to 11 U.S.C. § 101(14A).

3

purpose of working around an order of the state family court and obtaining a release from incarceration, a question of good faith in the filing of the case may arise.

Upon the filing of bankruptcy, the automatic stay precludes the enforcement of all acts and proceedings against the debtor or against property of the estate. In re Hass, 2005 WL 5714293 at *2 (E.D. Va.) (citing 11 U.S.C. § 362 (a)(1) & (6)). There are several exceptions to the automatic stay. Relevant in the context of these type cases are the exceptions for criminal prosecutions and for collection of a domestic support obligation from the property that is not property of the estate. See id. (citing 11 U.S.C. § 362(b)(1) and (2)(B)). The Court is aware that frequently, upon a finding of contempt for failure to pay domestic support as previously ordered, family courts in this state may order the obligor incarcerated for contempt. Often such an order provides that the person in contempt may purge the contempt and be released from incarceration by making the payments that are past due and the subject of the order. The issue which often arises is whether the automatic stay compels the release of a debtor incarcerated as a result of a proper, prepetition family court contempt order.

Courts in some jurisdictions have held that incarceration for civil contempt does not fall within the § 362(b)(1) exception to the automatic stay. See Hass at *2 (citing Lori v. Lori, 241 B.R. 353 (Bankr. M.D.Pa. 1999) (awarding damages for violating the automatic stay for a petition filed for civil contempt in state court against the debtor)). Many courts also find that § 362(b)(2)(B) provides an exception to the automatic stay for proceedings to collect support obligations only if the collection efforts are made against property that is not property of the estate, which in a Chapter 13 case is very limited. See Hass at *2 (finding section 362(b)(2)(B) did not apply because the contempt proceedings

were not directed at "property," but rather at the debtor's person); Johnston v. Parker (In re Johnston), 321 B.R. 262, 278-79 (D. Ariz. 2005) (finding an order requiring satisfaction of a large judgment or incarceration violated the stay because it did not consider whether the individual could pay the judgment from non-estate property).

However, some courts have been reluctant to find that the automatic stay applies to actions of a nonbankruptcy court to enforce its contempt orders. See e.g. NLRB v. Sawulski, 158 B.R. 971, 976-77 (E.D. Mich. 1993) (automatic stay does not apply to enforcement of a court's order); O'Brien v. Nachtigal (In re O'Brien), 153 B.R. 305 (Bankr. D. Or. 1993) (contempt proceeding for prepetition disobeyance of state court order not subject to automatic stay); Stovall v. Stovall, 126 B.R. 814 (N.D. Ga. 1990) (contempt proceeding not stayed so long as it pertains to upholding dignity of court); US Sprint Comm. Co. v. Buscher, 89 B.R. 154 (D. Kan. 1988) (court has the inherent power to take the necessary steps to ensure compliance with its orders and Congress did not intend to strip this power through the automatic stay).

In many instances, whether the filing of bankruptcy provides a legitimate means of addressing a domestic support obligation depends on the facts of the specific case. In some respects, it depends on a debtor's likelihood of successfully presenting a confirmable plan which always requires a debtor to have a sufficient and reliable source of income. It is contrary to the underlying purposes of the Bankruptcy Code for bankruptcy to serve as a shelter for debtors wishing to escape or evade validly entered family court orders determining and enforcing alimony, maintenance, or support obligations. The filing of bankruptcy to seek shelter from domestic obligations could result in a finding that the petition was filed in bad faith and the case dismissed. See e.g.,

Rogers, 164 B.R. at 390 (noting a petition is filed in bad faith when a debtor files bankruptcy to avoid his domestic support obligations).

In order to address the concerns of debtors, Chapter 13 trustees, domestic support recipients, and the state family courts in such situations, the Court establishes and suggests the following procedures in such cases. Prior to or shortly after the filing of such a case,[3] the debtor's attorney or any other party in interest, including the trustee, may request an expedited status hearing before this Court to determine whether the case is viable and has been filed in good faith or a hearing to determine the application of the automatic stay[4]. At such a hearing the Court may consider the debtor's history of payment and the frequency and necessity of actions by the recipient and the state family court to enforce payment orders. As a condition upon remaining in bankruptcy, a debtor may be required to enter into a consent order whereby the debtor agrees that in the event post-petition obligations are not timely made, the debtor's case may be dismissed without a further hearing. The Court will determine at the status hearing whether the individual has or will have income necessary to obtain confirmation of a Chapter 13 plan. The Court will consider whether the plan is filed in good faith. The Court will evaluate each case on a case-by-case basis. Until such a determination, the Court does not view a debtor's continued incarceration by the family court as a violation of the automatic stay as long as a debtor has an opportunity to consult with counsel and attend the status hearing.

---

[3] This Court is not opposed to the Family Court delaying the release of such individuals until after a status hearing has been held. Nothing in this opinion prevents the Family Court from holding its own status hearing.

[4] A request for such a hearing does not preclude the filing of a motion to dismiss, motion for relief from the automatic stay or other applicable action.

6

In addition, bankruptcy courts do not have exclusive jurisdiction in determining whether the automatic stay applies. "The court in which the litigation claimed to be stayed is pending has jurisdiction to determine ... whether the proceeding pending before it is subject to the automatic stay." Rogers v. Overstreet (In re Rogers), 164 B.R. 382, 391 (Bankr. N.D. Ga. 1994) (quoting Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litigation), 765 F.2d 343, 347 (2d Cir. 1985)). Since the state family court heard the underlying action, entered the contempt order, and has custody of the debtor at the time the bankruptcy case is filed, it is the best forum to decide whether the automatic stay is applicable. Rogers, 164 B.R. at 391 (Bankr. N.D. Ga. 1994).

Turning to the case at hand, the Trustee argued that the case should be dismissed because Debtor did not have regular income to make plan payments. Debtor's failure to file a revised Schedule I by November 15, 2010 indicates that the Trustee's argument may be true. Since the hearing, Debtor has been given an opportunity to demonstrate his source of regular income and ability to make plan payments. Therefore, if Debtor has failed to pay the November payment by the November 15th deadline or remain current in post petition domestic support payments, upon the filing of an affidavit by the Trustee attesting thereto, the Court will dismiss the case. If the payments have been made, the Court continues the hearing on the Motion to **December 2, 2010 at 9:00 a.m.** at the King and Queen Building, 145 King Street Room 225, Charleston, South Carolina 29401, to be heard in connection with the continued confirmation hearing.

**AND IT IS SO ORDERED.**

*John E. Waites*
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
November 17, 2010